UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES E. ERVIN,

    Plaintiff,                                  Civil Action No. 06-11681

v.                                         HON. ROBERT H. CLELAND
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff James E. Ervin brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further fact-finding and consideration pursuant to Section **B**. of the analysis.

## PROCEDURAL HISTORY

On March 15, 2004, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging an onset date of June 25, 2002 (Tr. 56-58). After the Social Security Administration (SSA) denied benefits on August 13, 2004, he made a timely request for an

administrative hearing, held on October 18, 2005 in Birch Run, Michigan (Tr. 293). Administrative Law Judge (ALJ) Bernard Trembly presided (Tr. 295). Plaintiff, represented by attorney Matthew Taylor, testified (Tr. 295-304). A vocational expert ("VE") also testified (Tr. 304-307). On November 25, 2005, ALJ Trembly determined that Plaintiff was not disabled, retaining the ability to perform a limited range of unskilled work at the light and sedentary exertional levels (Tr. 27). On March 10, 2006, the Appeals Council denied review (Tr. 3-5). Plaintiff filed for judicial review of the final decision on April 7, 2006.

## BACKGROUND FACTS

Plaintiff, born September 18, 1960, was age 45 when the ALJ issued his decision (Tr. 56). He completed 11th grade and worked previously as a heavy equipment operator (Tr.63, 68). He alleges disability as a result of back, shoulder, and neck problems (Tr. 62).

### A.     Plaintiff's Testimony

Attorney Matthew Taylor opened the hearing by stating that Plaintiff, 45, had worked until June, 2002 when he experienced a work-related injury (Tr. 295). According to Taylor, Plaintiff's condition was exacerbated rather than improved by November, 2002 right shoulder surgery (Tr. 295). Taylor maintained that in the time since surgery, Plaintiff "has no functional use . . . of his right dominant extremity" (Tr. 295-296).

Plaintiff testified that he had last worked in June, 2002 when he suffered an accident while installing a septic tank (Tr. 297). He reported undergoing physical therapy before and after surgery, which he stated that he discontinued after being told that his condition was unresponsive to further therapy (Tr. 297). Plaintiff indicated that as a result of the underlying

injury, he now experienced cervical spine pain and severe headaches on a daily basis, stating that he took Soma, Allervil, and Vicodin (Tr. 297-298). Plaintiff reported that his treating sources had informed him that further surgery would be futile, advising instead the implantation of a morphine pump in his spine (Tr. 299). He alleged that shooting pains in his legs created difficulty walking, indicating further that he experienced problems with his left shoulder and fingers as a result of "compensating" for right extremity limitations (Tr. 300). In addition to physical problems created by his workplace accident, Plaintiff testified that he took Nitrostat on an as needed basis for chest pain resulting from a mitral valve condition (Tr. 298).

Plaintiff, right-handed, testified that he was unable to hold a cup of coffee or write a check with his right hand, indicating that he experienced regular spasms in the right hand and arm (Tr. 300). Stating that he experienced the worst pain in the mornings, Plaintiff reported arising at the same time as his wife each morning so she could help him get showered and dressed before she went to work (Tr. 301). Plaintiff testified that he was unable to care for his four-year old child while his wife was at work, adding that he had attended only one of his other children's after-school activities (Tr. 302). He reported that pain prevented him from sleeping well, and had noticed recently that he had begun to experience concentrational problems (Tr. 303).

    **B.**    **Medical Evidence**

    **i. Treating Sources**

In October and November, 2002, Cynthia Rubert, M.D., noting that Plaintiff had

injured his right shoulder months earlier installing a septic tank, observed atrophy of the trapezius and supraspinatus on the right (Tr. 223-224). Plaintiff reported "minimal relief" from Motrin 800, describing his shoulder pain as "burning" and "shooting" (Tr. 224). On November 5, 2002, Physical Therapist Nichole Kortas characterized Plaintiff's attendance at therapy sessions as "diligent," finding nonetheless that he was "still unable to [use his] right arm functionally" (Tr. 116). On November 25, 2002, Plaintiff underwent a right shoulder rotator cuff repair without complications (Tr. 156, 161-163). November, 29, 2002 treatment notes state that Plaintiff received "no relief" from regular strength Vicodin (Tr. 222). In February, 2003, Rubert reported that since undergoing a right shoulder rotator cuff repair the previous November, he had submitted to "physical therapy, anti-inflammatory medications, trials in analgesics, as well [as] antispasmodics without significant relief" (Tr. 217). She noted that Plaintiff continued to demonstrate "atrophy of the supraspinatus fossa" (Tr. 217). In March, 2003, Rubert again noted the presence of atrophy of the "cervical paraspinal muscles/trapezius muscles despite intensive therapy" (Tr. 215). In May, 2003, Rubert noted that Plaintiff failed to keep several physical therapy appointments (Tr. 211). The next month's treating notes state that Plaintiff continued to experience right shoulder atrophy (Tr. 210). In June, 2003, an MRI study showed significant stenosis of the cervical spine (Tr. 167). The same month, Plaintiff sought emergency treatment for a shoulder injury received at the county jail (Tr. 136-140). In November, 2003, Plaintiff was discharged from physical therapy, after treaters determined that he "was not making any progress" (Tr. 177). The next month, David A. Wiersema, D.O., also observed atrophy "around the right

parascapular area" (Tr. 196).

In February, 2005, Plaintiff sought a neurosurgical consultation for neck and radiating lower back pain (Tr. 283). Brian R. Copeland, M.D., noted that Plaintiff showed "minimal signs of left C7 radiculopathy," recommending against surgical intervention (Tr. 283). Dr. Copeland opined that Plaintiff's discomfort could be relieved with a morphine pump (Tr. 283). In December, 2005, Plaintiff reported neck, shoulder, and hand pain at a level of "10" on a scale of one to 10 (Tr. 262). In August, 2005, Suzanne Alaine Blanchard, N.P., reported that Plaintiff's gait and station were normal, but noted that he demonstrated "rigidity and contracture of [the] right hand," along with supraspinatus atrophy" (Tr. 279).

### ii. Consultive and Non-Examining Sources

In April, 2004 an evaluation performed by Plaintiff's long-term disability insurance provider noted that upon examination he "exhibited marked postural depression of the right shoulder while at rest," which showed "inconsistency in the extent of the postural depression of the right shoulder, which was noted to be much less profound after completion of the physical examination" (Tr. 236). The same report noted a lack of muscle atrophy in the affected areas, but acknowledged that Plaintiff was "effectively unable to use the right upper extremity in any activities," adding that "the restriction appears principally related the increasing neurologic symptoms and not the effects of the orthopedic injury involving the right shoulder" (Tr. 238, 244-245). The report stated that objective medical evidence suggested a "satisfactory" recovery following Plaintiff's November, 2002 surgery (Tr. 243).

In August, 2004 a physician hired on behalf of the SSA performed Physical Residual

Functional Capacity Assessment of Plaintiff's condition on the basis of treating records (Tr. 248-255). The report found that Plaintiff retained the ability lift 20 pounds occasionally, and 10 pounds frequently, along with the ability to sit, stand, or walk for approximately six hours in an eight-hour workday (Tr. 249). Within the above-stated exertional range, Plaintiff was deemed to retain only a limited ability to push or pull with the upper extremities (Tr 249). The report further limited Plaintiff to only occasional ladder, rope, or scaffold climbing (Tr. 250). Plaintiff's manipulative restrictions included limitations on the ability to reach with his right hand (Tr. 251). The report found the absence of visual, communicative, and environmental limitations (Tr. 251-252). The assessment concluded by stating that Plaintiff's allegations were "not supported by physical or radiological findings (Tr. 253).

### C.     Vocational Expert Testimony

Vocational Expert Stephanie Leech characterized Plaintiff's former work as a heavy equipment operator and truck driver as semi-skilled at the medium exertional level (Tr. 25, 304).[1]

The ALJ then posed the following question:

"Well let me give you a hypothetical[.] lets assume that were (sic) dealing with a fictitious person of that same age, education, work experience of Mr. Erin.

---

[1] The hearing transcript contains a number of obvious misquotes. At transcript page 304, for example, the transcription refers to heavy equipment operator "done in a meeting." However, in the context of the testimony the VE more likely stated that Plaintiff's work was *done at the medium* (level of exertion). Fortunately, the ALJ's November 25, 2005 findings, which cite VE Leech's testimony, provide illumination.

> Assume that he has the ability to lift and carry at a light level with his [non]-dominant extremity, take a stand walk for fours in an eight hour day, sit, stand for four hours each alternately, push pull would be never with the upper dominant right extremity, . . . would be never to any that required two hands, arms such as crawling and climbing and things like that he couldn't do, manipulative limitations would be reduced to less than occasional or actually pretty much non-functional with the right upper extremity, that be reaching handling with any kind of manipulation. And I don't really I always have a hard time with the cervical but he would certainly have he has a definite decreased range of motion in his neck and could not sustain any positioning of his head and neck other than the normal upright position for, that can only be probably less than occasionally during the course of the day okay positioning his head other than in an upright position. In other words he couldn't look down at a keyboard or he couldn't look up at a shelf or anything like that. That, that, with those limitations would that person be able to return to Mr. Ervin's past work?"

(Tr. 304-305). Given the above limitations, the VE found that such an individual could perform work at the light level of exertion, including work found in the regional economy as an information clerk (1,200 jobs), gate security (750), and usher (500) (Tr. 305-306). The VE found further that if the individual were required to take unscheduled breaks for up to 20 minutes he would be precluded from all work (Tr. 306). In response to questioning by Plaintiff's attorney, the VE stated that 50 percent of the gate security positions would be eliminated if the hypothetical limitations included the inability to write (Tr. 306).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ Tremby found the severe impairments of "status post right shoulder arthroscopic surgery, degenerative disk disease of the cervical spine, small herniated disks at C5-6 and C6-7" (Tr. 20). He determined that

although Plaintiff experienced severe impairments, they neither met nor equaled any impairment listed in Appendix 1 Subpart P, Regulations No. 4 and No. 16 (Tr. 22). The ALJ also noted the presence of tinnitus, dyspnea, mitral valve disorder, hypertension, urinary frequency, and depression, finding however, that these impairments were non-severe (Tr. 20-21).

The ALJ concluded that Plaintiff was unable to perform his past relevant work as either a heavy equipment operator or truck driver (Tr. 25). However, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> "to lift/carry 10 pounds with his left arm; lift/carry 20 pounds with his left arm; can push and pull with his left arm; can use his left arm for fine and gross manipulations; stand/walk four hours per eight-hour day; sit four hours per eight-hour day alternating with standing; cannot maintain his head and neck in a sustained position; and can perform less than occasional movements of his head and neck"

(Tr. 23). Adopting the VE's job findings, the ALJ concluded that Plaintiff could perform the work of an information clerk, unskilled at the sedentary exertional level (1,200 jobs) and as an usher, unskilled at the light exertional level (500 jobs).

The ALJ deemed Plaintiff's alleged degree of limitation "not totally credible," stating that none of Plaintiff's treating sources found him disabled (Tr. 24, 26). The ALJ also found that the absence of muscle atrophy noted in the medical records stood at odds with Plaintiff's testimony that he was almost completely inactive (Tr. 24).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to

consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Listing 1.04(A)[2]

Plaintiff argues first that the ALJ committed reversible error by failing to find him disabled at Step Three of his analysis. *Plaintiff's Brief* at 4-5. He contends that

---

[2]Plaintiff's Motion for Summary Judgment argued that he met Listing 1.05(C). *Docket* #12 at 4-5. However, in his reply brief, Plaintiff states that since his claim for disability was filed, the SSA has amended the listing, and his claim for disability at Step Three is actually premised on equaling Listing 1.04(A). *Docket* #19 at 1.

the extent of his limitations, as documented by his treating sources, demonstrates that his condition is "equal in severity and duration" to 20 C.F.R. Part 404, App. 1, Listing 1.04(a).[3] *Id*.; 20 CFR 404.1526.

Listing 1.04(A) reads as follows:

*Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04. Plaintiff admits that he does not meet Listing 1.04(A), but argues that he *equals* the listing pursuant to 20 C.F.R. § 404.1526 which requires equivalency in one of three ways: 1). Evidence showing that a portion of the Listing's requirements are met, or, that the claimant demonstrates *all* the requirements but cannot establish the requisite level of severity; 2). Evidence showing impairments "not described in appendix 1" but of "equal medical significance to those of a listed impairment" or, 3). "[A] combination of impairments, not one of which meets a listing" but is nonetheless "medically equivalent." 20 C.F.R. § 404.1526. *See Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004) ( "In

---

[3]*See* footnote 2.

-11-

considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.").

While Plaintiff argues reasonably that his rotator cuff injury, reduced range of motion, rigidity and contracture of the right hand, along with disc herniations at C6-7 supports a finding that he experiences limitations equivalent to the Listing 1.05(A), substantial evidence also supports the opposite conclusion, including treating notes indicating the absence of nerve root compression or radiculopathy and a "normal gait and station" (Tr. 22-23 *referencing* 279).  Further, although the section of the administrative decision labeled "Step Three" consists only of the arguably "perfunctory" statement that Plaintiff did not meet or equal the listings, the preceding section cites record evidence at length to support a non-disability finding at Step Three, including treating notes finding the absence of "significant spinal stenosis or cord compression," along with the observation that Plaintiff's c5-6 and C6-7 herniated disks were "small" (Tr. 20).  The ALJ's Step Three determination, adequately supported with material culled from the record, is well within the "zone of choice" accorded to the ALJ and does not provide a basis for remand.

### B. Credibility

Plaintiff also argues that the ALJ impermissibly rejected his allegations of disabling pain, contending that the Step Five finding that he could perform a limited

range of unskilled sedentary work is tainted by the ALJ's failure to support his credibility finding. *Plaintiff's Brief* at 6-9. Although Plaintiff concedes that the administrative opinion included a credibility analysis as required by SSR 96-7p, he characterizes the ALJ's reasons for rejecting his claims as "superficial," arguing that they are premised on a misinterpretation of the record. *Id.* at 6.

As a general rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *see also Richardson, supra,* 402 U.S. at 401. An ALJ's credibility determination is guided by SSR 96-7p, which further describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p mandates that:

> "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."

*Id.*

In accordance with SSR 96-7p, the ALJ included a number of reasons for rejecting Plaintiff's allegations. However, the credibility determination falters on its largely erroneous treatment of record evidence. Specifically, the treating, consultive, and non-examining material, as cited by the ALJ to support his credibility determination, amounts to at best a misinterpretation and at worst, a distortion of source opinions.

The ALJ's five reasons for rejecting the Plaintiff's professed degree of limitation, found on page 24 of the transcript are discussed as follows: First, the ALJ cites his own findings that Plaintiff's conditions of hypertension, mitral valve disorder, urinary frequency, and depression are not severe at Step Two of his analysis. However, the ALJ does not state why his findings of non-severity undercut Plaintiff's allegations of disability based on a June, 2002 shoulder injury (Tr. 24 referencing 21). Further, at no place in the record does Plaintiff allege that his disability claim is precipitated by these conditions. Significantly, at the time Plaintiff applied for benefits, he listed only the physical problems created by his June, 2002 accident (Tr. 62). It does not follow that because substantial evidence might support the ALJ's contention that Plaintiff's hypertension, mitral valve disorder, urinary frequency, and depression are not severe that Plaintiff's allegations of limitations as a result of the entirely unrelated conditions should be rejected.

Second, the ALJ cites a medical examiner's observation noting "inconsistency in the extent of [Plaintiff's] postural depression of his right shoulder" to support the proposition that Plaintiff exaggerated his condition to medical examiners (Tr. 24 referencing 236). However, the ALJ's heavy reliance on this non-treating source amounts to a distortion of the record as a whole.[4] In contrast to the same examiner's finding the absence of atrophy, Plaintiff's *treating* sources found unanimously on numerous occasions that he demonstrated atrophy as result of the under use of his neck and arm muscles (Tr. 127, 214, 215, 207, 210).

Third, I cannot discern the significance the ALJ attaches to the fact that November, 2003 treating notes indicate that Plaintiff complained to a member of his physician's staff that he had not received a refill of a Vicodin prescription, later admitting that he forgot that he had in fact refilled the same prescription three weeks earlier (Tr. 24 *referencing* 204). Neither these records nor any other kept by Plaintiff's treating sources suggest that he either exaggerated his symptoms or

---

[4]While the ALJ permissibly used Dr. Hyatt's opinion, he gave it inordinate weight when considered alongside the treating sources. Dr. Hyatt's opinion should be further tempered by the fact that he was hired by Plaintiff's long term disability provider. "[A] plan administrator, in choosing the independent experts who are paid to assess a claim, is operating under a conflict of interest that provides it with a 'clear incentive to contract with individuals who were inclined to find in its favor that a claimant was not entitled to continued disability benefits.'" *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston,* 419 F.3d 501, 507 -508 (6th Cir. 2005); *Calvert v. Firstar Fin., Inc.,* 409 F.3d 286, 292 (6th Cir.2005)(internal citations omitted).

demonstrated drug-seeking behavior (Tr. 204).

In regard to the ALJ's fourth reason for rejecting Plaintiff's allegations, I find that the omission of a disability pronouncement by treating sources may be considered a factor in the credibility determination, but is insufficient by itself to discount the Plaintiff's claims.

The ALJ's fifth and final reason for rejecting Plaintiff's claims suffers from defects similar to the first three reasons: The ALJ cites record evidence that Plaintiff admitted exercising six times between May 23, and August 2, 2005 to discredit his hearing testimony that he had "gone from working 10 to 14 hours a day to doing nothing" (Tr. 24 *referencing* 299). However, read in the context of his testimony, his statement that he was now "doing nothing" is more reasonably interpreted to suggest that his life's pace had slowed dramatically since the June, 2002 accident than to assert that he literally did "nothing." Indeed, in the statement preceding "nothing," Plaintiff testified that he attempted to take a block-long walk each day (Tr. 299). More obviously, as noted above, the fact that all of Plaintiff's treating sources found the presence of muscle atrophy support his contention that he was unable to perform routine tasks, much less exercise with any regularity.

Despite the deference accorded to the administrative decision, pursuant to SSR 96-7p, the ALJ's decision must be based on specific reasons for the findings of credibility, supported by substantial evidence in the record. *Id.;Howard v.*

*Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). In this case, although the ALJ devoted several paragraphs to a 96-7p analysis, for the most part, the reasons provided stand against the great weight of record evidence. *See Hayden v. Barnhart,* 374 F.3d 986, 994 (10th Cir.) ("The failure to make credibility findings regarding the claimant's critical testimony fatally undermines the Commissioner's argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability.") As shown in the present case, the *distortion* of record evidence skirts the requirement that the ALJ  support his credibility determination  as effectively as the *absence* of a 96-7p analysis..

In closing, I note that the errors in the administrative decision, while critical, do not suggest that Plaintiff is automatically entitled to benefits.  Nonetheless, a credibility determination premised on the erroneous use of record evidence defeats the Ruling's purpose and a remand for further fact-finding is required. Upon remand, Plaintiff may be permitted to address evidence standing at odds with his allegations of disability.[5]   In light of these facts I find that pursuant to *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994)*,* this case should be remanded for further proceedings consistent with Section **B**. of the analysis.

---

[5]Plaintiff's administrative hearing testimony is unusually brief (eight pages).

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, to the extent that the Court remands this case for further fact-finding pursuant to Section **B**. of the above analysis.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same

order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: April 30, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 30, 2007.

S/Gina Wilson<br>
Judicial Assistant